UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 21-cv-07171-SI |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR VACATUR AND INJUNCTIVE RELIEF** |
| NADA WOLFF CULVER, et al., | Re: Dkt. No. 68 |
| Defendants. | |

On November 21, 2025, the Court held a hearing on plaintiffs' motion for vacatur and injunctive relief.  For the reasons set forth below, the Court GRANTS plaintiffs most of the relief they seek as set out in the proposed amended order filed with plaintiffs' reply brief.

**BACKGROUND[1]**

In an order filed October 15, 2024, the Court granted in part and denied in part plaintiffs' motion for summary judgment as to their claims under the Federal Land Policy and Management Act ("FLPMA"), the National Environmental Policy Act ("NEPA"), the Clean Air Act ("CAA"), and the Endangered Species Act ("ESA"). Dkt. No. 45.  The Court held that defendant the U.S. Bureau of Land Management's ("BLM") 2019 Record of Decision ("ROD"), which *inter alia* designated a route network for off-highway vehicles ("OHVs") in the West Mojave Desert ("WEMO") did not comply with FLPMA because BLM (1) failed to explain and demonstrate how

---

[1] The full factual and procedural background of this case and the related cases, dating back to 2003, is set forth in the summary judgment order at Docket No. 45, and is incorporated by reference.

the 2019 OHV Route Network minimizes impacts to the desert tortoise and Lane Mountain milk-vetch ("LMMV"), *id*. at 24-28, and (2) improperly relied on optional mitigation measures in addressing FLPMA's minimization obligations. *Id*. at 3, 30-31. For similar reasons, the Court held that BLM's adoption of Plan Amendments ("PAs") III, IV, and V was invalid. *Id*. at 42.

Under the CAA, the Court held that BLM's conformity determination for $PM_{10}$ impacts failed to comply with regulations requiring the agency to identify "the process for implementation and enforcement" of "reasonably available control measures," including "an implementation schedule containing explicit timelines for implementation." *Id*. at 48.

Under NEPA, the Court held that BLM (1) improperly relied on the assumption that OHV use would remain constant through 2035 in its air quality analysis, *id*. at 72-74, and (2) failed to analyze the greenhouse gas impacts among alternatives. *Id*. at 75.

Finally, under the ESA, the Court held that FWS' Biological Opinion ("BiOp") and Incidental Take Statement ("ITS") for the 2019 ROD violated the ESA by (1) relying on BLM's optional mitigation measures when determining whether the 2019 Route Network would jeopardize the desert tortoise, *id.* at 94-96, (2) ignoring the best available science when determining the OHV routes' impacts to the tortoise, *id.* at 89-92, (3) using an unsupported surrogate approach to address tortoise incidental take, *id.* at 100-02, and (4) failing to include reasonable and prudent measures, as well as terms and conditions, with respect to minimizing the incidental "take," e.g., killing or harming, of the tortoise. *id.* at 104-05. BLM's reliance on FWS' BiOp and ITS was also therefore invalid. *Id*. at 107. Of particular importance to the Court's conclusions on the ESA's claims was information in the administrative record showing that surveys have documented desert tortoise population declines in the WEMO Planning Area averaging 7.1 percent per year since 2004, and that between 2014 and 2024, the FWS estimated a loss of approximately 50% of the adult desert tortoises in the Western Mojave Recovery Unit, the area for the 2019 OHV Route Network. *Id*. at 84-86. In addition, the Court found it significant that FWS acknowledged that the 2019 OHV Route Network was "reasonably certain" to result in numerous deleterious impacts on the desert tortoise, but nevertheless concluded that the network would not jeopardize the continued existence of the species based in large part on unenforceable, non-specific commitments by BLM regarding

mitigation and minimization measures, as well as enforcement by BLM. *Id*. at 94-96.

Now before the Court is plaintiffs' motion for vacatur and injunctive relief.

**LEGAL STANDARD**

"A district court's choice of equitable remedy is reviewed for abuse of discretion." *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). "The APA authorizes a district court to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id*. (quoting 5 U.S.C. § 706(2)(A)). "Where a court holds an agency action unlawful, vacatur and remand is the default remedy under the APA, but the court retains equitable discretion in 'limited circumstances' to remand a decision without vacatur while the agency corrects its errors." *Id*. "Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

Interim injunctive relief is warranted where a plaintiff demonstrates (1) "likely" irreparable injury; (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "that the public interest would not be disserved by a[n] . . . injunction." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018). However, "[w]hen considering an injunction under the ESA, we presume that remedies at law are inadequate, that the balance of interests weighs in favor of protecting endangered species, and that the public interest would not be disserved by an injunction." *Id*. A plaintiff seeking an injunction under the ESA must still "demonstrate that irreparable injury 'is likely in the absence of an injunction.'" *Id*. at 818 (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)).

United States District Court
Northern District of California

3

**DISCUSSION**

Plaintiffs seek a partial vacatur of the 2019 OHV Route Network[2]; a partial vacatur of the 2019 BiOp and ITS with respect to the desert tortoise; partial or full vacatur of PAs III, IV, and V; interim injunctive relief in the form of closing OHV routes in desert tortoise and LMMV critical habitat, as well as, *inter alia*, requiring BLM to develop and implement a monitoring program and to undertake restoration of "translinear disturbances"; and the imposition of interim and final deadlines for the remand. Plaintiffs contend that this relief is consistent with the Court's approach in the prior remand in the related case and is appropriate based on the serious violations the Court found in the summary judgment order.

Defendants oppose most of plaintiffs' request.[3] Although defendants acknowledge that "vacatur and remand is the default remedy under the APA," *Montana Wildlife Fed'n*, 127 F.4th at 50, they argue that the Court should leave all agency decisions in place during remand to avoid "risking disruptive circumstances." Opp'n at 1. Defendants characterize the defects that the Court found in the summary judgment as "procedural," *see id.*, and they argue that the Court should defer to the agencies' expertise, including by not setting a schedule for the completion of remand.

This Court has presided over the WEMO litigation since 2003, including the prior remand that resulted in the 2019 OHV Route Network. Throughout this time period, desert tortoise populations have continued to decline precipitously. The Court's 2024 summary judgment order did not identify merely "procedural" violations, but also found multiple substantive FLPMA and ESA violations. Based upon the detailed findings in the summary judgment order and for the reasons articulated by plaintiffs in their papers, the Court finds that the relief sought by plaintiffs, as modified by their reply brief, is largely warranted. With regard to one of the most contested

---

[2] Plaintiffs' motion originally proposed that the Court vacate the entire 2019 OHV Route Network, the result of which – according to plaintiffs – would be a reversion to the 2006 OHV Route Network that the Court previously found did not comply with FLPMA's minimization criteria. In response to defendants' objections to a complete vacatur, plaintiffs' reply proposes a partial vacatur that would vacate only those portions of the 2019 OHV Route Network that are in designated critical habitat for the desert tortoise. All of the designated critical habitat for the LMMV is within desert tortoise critical habitat.

[3] Defendants do not object to vacatur of Plan Amendments III and V, nor do they object to vacatur of BLM's CAA conformity determination.

4

issues – whether desert tortoise critical habitat should be closed to OHV use – the Court finds that the closure is appropriate whether as a consequence of a partial vacatur of the 2019 OHV Route Network or, as discussed *infra*, as targeted injunctive relief necessary to prevent irreparable harm to protected species. In the creation of the 2019 OHV Route Network, the agencies never explained how the designation of thousands of miles of routes in desert tortoise critical habitat was consistent with either FLPMA's minimization criteria or the ESA's goals of preventing extinction of listed species or the more ambitious goal of species recovery. Studies in the administrative record show that closing areas to OHVs is beneficial to the desert tortoise, and the agencies have long recognized that OHVs cause numerous negative impacts on the protected animal. Further, the Court finds it significant closure of OHV routes in desert tortoise critical habitat would still leave 63% of OHV routes available for OHV use, and that 271,661 acres of OHV "Open Areas" would remain accessible to OHVs.

Accordingly, after careful consideration of the parties' briefing, the arguments of counsel at the hearing, the Court's 2024 summary judgment decision, the administrative record, and the legal standards and requirements, the Court hereby GRANTS IN PART plaintiffs' motion, and ORDERS as follows with respect to remand and vacatur:

1. BLM's 2019 ROD for the WEMO Plan, as well as FWS's 2019 BiOp and ITS, are remanded for further proceedings consistent with the Court's 2024 summary judgment decision and all governing laws and regulations.

2. BLM's 2019 ROD is vacated as follows: (a) the decision to adopt the 2019 Route Network is partially vacated as to OHV routes in desert tortoise and LMMV critical habitat; (b) PA III is vacated, PA IV is vacated except for BLM's decision to close Chisholm Lake, and PA V is vacated, with reinstatement of the permit system for PA-V that existed immediately prior to BLM's adoption of the 2019 ROD (i.e., with required education and free, but required, permits); (c) the CAA conformity determination is vacated; and (d) BLM's determination that its reliance on the 2019 FWS BiOp and ITS fulfilled BLM's obligations under Section 7 of the ESA is vacated.

3. During the remand period, BLM shall be prohibited from approving new routes.

4. The 2019 FWS BiOp and ITS are partially vacated with respect to OHV use in desert

United States District Court
Northern District of California

5

tortoise critical habitat. BLM shall take all prudent and reasonable measures to prohibit OHVs in desert tortoise critical habitat in order to avoid tortoise "take."

5. Defendants shall complete the remand proceedings by October 14, 2029. More specifically, BLM shall reinstate the permit requirements for Rand Mountain (PA V) and close routes opened under PAs III and IV within 60 days of the date of issuance of this Order; (2) complete revision of the CAA conformity determination, including associated implementation and enforcement requirements, within six months of the date of issuance of this Order; and (3) prepare a revised NEPA analysis, issue a new route network decision, and complete new ESA Section 7(a)(2) consultation no later than October 14, 2029.

6. Defendants shall file semi-annual reports with the Court, with copies to plaintiffs via normal filing through ECF, with the first report due 180 days after the date of issuance of this Order, and each subsequent report due 180 days thereafter.

The Court also finds that interim injunctive relief is necessary to protect the imperiled desert tortoise from irreparable harm during the remand proceedings.[4]  Defendants argue that plaintiffs have not demonstrated a specific causal connection between the 2019 OHV Route Network and harm to the desert tortoise.  The Court disagrees.  As detailed in the Court's 2024 summary judgment decision and supported by the administrative record, OHV use in the WEMO area is a significant ongoing cause of harm to the desert tortoise, and closures of areas to OHVs is beneficial to desert tortoise survival.  The Court found that the 2019 OHV Route Network violated FLPMA and the ESA in multiple respects with regard to the desert tortoise.  "While the irreparable harm must be causally connected to the activity to be enjoined . . . the cause of irreparable harm can be broader than merely the activity to be enjoined." *Nat'l Wildlife Fed'n*, 886 F.3d at 819.  In addition, to the extent defendants contend that plaintiffs must show irreparable harm to the species, the Ninth Circuit has held otherwise, stating that "[s]howing an extinction-level threat to listed species is not required before an injunction can issue under the ESA," and "[t]hus, a threat of harm to a listed species that

_____

[4] Because all of the LMMV critical habitat is within desert tortoise habitat, the Court focuses its analysis of injunctive relief on the desert tortoise.

falls below an imminent extinction threat can justify an injunction" because "the ESA's underlying purpose is the conservation of species." *Id.*

Finally, plaintiffs' declarations show that plaintiffs themselves are likely to suffer harm to their own interests, including the interests of their members, stemming from the likely irreparable harm to the desert tortoise and LMMV. *See generally* Hohman Decls. (Dkt. Nos. 68-1 & Dkt. No. 71-5); stating, *inter alia*, that she visits and intends to visit "areas of high-value desert tortoise and Lane Mountain milk-vetch habitat in order to view, study, enjoy and photograph these resources throughout the WEMO" and since 1989 has seen a "troubling decline" in desert tortoise habitat quality and desert tortoise population and that "[u]nless the Court orders BLM to close OHV routes in desert tortoise critical habitat, my ability to see desert tortoises in the wild during my above-described future visits will be impaired if not outright eliminated.")[5]; *Nat'l Wildlife Fed'n*, 886 F.3d at 822 (finding plaintiff environmental groups established irreparable harm to their own interests based on declaration from individual "that described his recreational and aesthetic pursuits on Idaho's rivers that depend on the health of listed salmonid populations" and where individual stated "[f]ewer salmon mean fewer opportunities to see them . . . fewer salmon directly harm my enjoyment of these activities").

As to the remainder of the injunctive relief that plaintiffs seek (monitoring and restoration of closed routes), the Court has limited the monitoring to measuring compliance with route closures and prevention of new illegal routes, and the Court has declined to impose a restoration requirement. While the Court is supportive of robust monitoring and restoration, the Court also recognizes that the agencies are grappling with limited resources. The Court encourages the agencies to take all steps necessary to protect the desert tortoise and LMMV, but declines to order additional injunctive

---

[5] Plaintiffs submitted additional declarations regarding irreparable harm with their reply brief. Defendants object to these declarations on the ground that they introduce "new" evidence. The Court is not persuaded that these declarations in fact add new evidence as opposed to supplementing plaintiffs' initial showing. However, the Court has only considered the initial and reply declarations of Judy Hohman, as the reply declaration simply expands upon Ms. Hohman's statements in her initial declaration about her activities in the WEMO, including searching for desert tortoises, how her visits to the WEMO have been detrimentally impacted by OHV use, and how her ability to see desert tortoises in the wild has been impaired. *See* Second Decl. of Hohman (Dkt. No. 71-5).

United States District Court
Northern District of California

relief at this time.

Accordingly, the Court grants the following injunctive relief for the duration of the remand proceedings:

1. BLM is ordered to close all OHV routes in desert tortoise and LMMV designated critical habitat and clearly mark such routes as closed with appropriate signage and fencing as needed. BLM shall keep open designated county roads and highways, as well as any and all routes needed to provide access for established easements, administrative access, emergency access, and other permitted uses (but not public OHV recreational use).

2. BLM is ordered to develop and implement within the WEMO planning area a monitoring program to determine compliance with the route closures, as well as prevention of impacts from new illegal routes. The monitoring program shall be seasonally appropriate and fully implemented no later than June 1, 2026. Defendants shall submit the monitoring program results as part of the semi-annual reports required above.

3. BLM is prohibited from approving any new OHV routes outside of the official route designation process.

4. BLM shall comply with the deadlines for completing various actions on remand set forth above.

**CONCLUSION**

For the foregoing reasons, the Court orders that: (1) the 2019 ROD, Biological Opinion, and Incidental Take Statement are remanded for further proceedings consistent with the Court's October 15, 2024, summary judgment decision (ECF No. 45) and all governing laws and regulations; (2) the 2019 ROD is vacated and partially vacated as described above; (3) the 2019 Biological Opinion and Incidental Take Statement is partially vacated as to OHV use in desert tortoise critical habitat; (4) defendants must complete the remand proceedings consistent with the deadlines set forth in this Order; and (5) the interim injunctive relief specified in this Order is granted, and such relief will remain in place during the remand proceedings.

Plaintiffs are ordered to submit any request for attorneys' fees and costs within 90 days of

the date of this Order.

**IT IS SO ORDERED**.

Dated: January 23, 2026

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California